# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

SONIA M. DEJESUS,                     :
     Plaintiff,                     :     CIVIL ACTION
                                  :
     v.                             :
                                    :
KILOLO KIJAKAZI,                      :     NO. 20-cv-06115-RAL
Commissioner of Social Security,[1]   :

**RICHARD A. LLORET**                                              **April 8, 2022**
**U.S. Magistrate Judge**

## <u>MEMORANDUM OPINION</u>

Sonia DeJesus filed a claim for Supplemental Security Income ("SSI") benefits

with the Commissioner of Social Security. An ALJ denied her application, and the

Appeals Council affirmed the ALJ's decision. In seeking review of her claim, Ms.

DeJesus alleges that the ALJ improperly evaluated her fibromyalgia symptoms and

erroneously found the opinion of her treating physician not persuasive. The

Commissioner responds that the ALJ's conclusions are supported by substantial

evidence and are thus entitled to deference. After carefully reviewing the record, I find

the ALJ erred by not properly applying relevant agency rulings to her evaluation of Ms.

DeJesus' record. I also find the ALJ reached conclusions regarding Ms. DeJesus'

symptoms and the medical opinion of her treating physician not supported by

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Ms. Kijakazi should be substituted for the former Commissioner of Social Security, Andrew Saul, as the defendant in this action. No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act. 42 U.S.C. § 405(g) (Social Security disability actions "survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

substantial evidence. I will reverse the Commissioner's denial of benefits and remand this matter for further proceedings consistent with this opinion.

## PROCEDURAL HISTORY

On December 15, 2017, Ms. DeJesus filed a claim for SSI, alleging a disability beginning on August 1, 2017.[2] Administrative Record ("R.") 440. Her claim was initially denied on March 12, 2018. R. 364.

On April 4, 2018, Ms. DeJesus requested an administrative hearing before an ALJ. R. 369. The ALJ held the hearing on October 15, 2019 and issued a decision denying Ms. DeJesus' claim on November 29, 2019. R. 11, 30. On January 13, 2020, Ms. DeJesus appealed the ALJ's unfavorable decision to the Social Security Administration's Appeals Council. R. 438. The Appeals Council denied Ms. DeJesus' request for review on October 1, 2020. R. 1. On December 3, 2020, Ms. DeJesus filed this appeal in federal court. Doc. No. 1.

The parties consented to my jurisdiction (Doc. No. 4) and have briefed the appeal. Doc. No. 18 ("Pl. Br."), 19 ("Comm'r Br."), and 21 ("Pl. Reply").

## FACTUAL BACKGROUND

### A. The Claimant's Background

Ms. DeJesus was forty-six years old on the date of her SSI application, making her a "younger person" under the regulations. R. 29; 20 C.F.R. § 416.963(c). She has at least a high school education and can communicate in English. R. 29. She has no past

---

[2] The ALJ notes that Ms. DeJesus has filed four previous applications for disability insurance benefits. R. 11-12. I recommended upholding an ALJ's denial of Ms. DeJesus' previous application. *See DeJesus v. Berryhill*, No. CV 16-01061, 2017 WL 1847355, at *1 (E.D. Pa. Mar. 21, 2017) (Lloret, MJ.), report and recommendation approved, No. CV 16-1061, 2017 WL 1843897 (E.D. Pa. May 8, 2017) (McHugh, J.). Nevertheless, I will only evaluate this application based on the ALJ decision and record before me.

relevant work. *Id*. On December 15, 2017, Ms. DeJesus applied for SSI, alleging disability based on fibromyalgia, depression, bipolar disorder, migraines, asthma, and allergies. R. 440, 458.

**B. The ALJ's Decision**

On November 29, 2019, the ALJ issued her decision finding that Ms. DeJesus was not eligible for SSI because she has not been under a disability, as defined by the Social Security Act. R. 11, 30. In reaching this decision, the ALJ made the following findings of fact and conclusions of law pursuant to Social Security's five-step sequential evaluation.[3]

At step one, the ALJ concluded that Ms. DeJesus had not engaged in substantial gainful activity ("SGA") since October 26, 2017, which the ALJ wrote was the SSI application date.[4] R. 14. At step two, the ALJ determined that Ms. DeJesus had the following severe impairments: fibromyalgia, asthma, migraines, residuals of bariatric surgery, obesity, bipolar disorder, depression, and anxiety. *Id*.

At step three, the ALJ compared Ms. DeJesus' impediments to those contained in the Social Security Listing of Impairments ("listing").[5] The ALJ found that Ms. DeJesus'

---

[3] An ALJ evaluates each case using a sequential process until a finding of "disabled" or "not disabled" is reached. The sequence requires an ALJ to assess whether a claimant: (1) is engaging in substantial gainful activity; (2) has a severe "medically determinable" physical or mental impairment or combination of impairments; (3) has an impairment or combination of impairments that meet or equal the criteria listed in the social security regulations and mandate a finding of disability; (4) has the residual functional capacity to perform the requirements of her past relevant work, if any; and (5) is able to perform any other work in the national economy, taking into consideration her residual functional capacity, age, education, and work experience. *See* 20 C.F.R. § 416.920(a)(4)(i)–(v).

[4] While the ALJ wrote that Ms. DeJesus filed her SSI application on October 26, 2017, R. 11, Ms. DeJesus' application is dated December 15, 2017, R. 440.

[5] The regulations contain a series of "listings" that describe symptomology related to various impairments. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1. If a claimant's documented symptoms meet or equal one of the impairments, "the claimant is conclusively presumed to be disabled." *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). If not, the sequential evaluation continues to step four, where the ALJ determines whether the impairments assessed at step two preclude the claimant from performing any relevant work the claimant may have performed in the past. *Id*.

migraines did not medically equal listing 11.02 (epilepsy), her fibromyalgia symptoms did not medically equal any listings, and that her asthma symptoms did not meet listing 3.03 criteria. R. 14–15. Furthermore, the ALJ found that none of Ms. DeJesus' mental health impairments met any listing criteria. R. 15–16.

Prior to undertaking her step four analysis, the ALJ assessed Ms. DeJesus' residual functional capacity ("RFC"), or "the most [Ms. DeJesus] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). The ALJ found that Ms. DeJesus could undertake light work as defined in 20 C.F.R. § 416.967(b), subject to certain limitations.[6] R. 16–29. The ALJ could not make a formal step four finding because Ms. DeJesus has no past relevant work, as defined by 20 C.F.R. §416.965. R. 29. At step five, the ALJ identified three jobs that Ms. DeJesus could perform considering her age, education, work experience, and RFC: hand packager, sorter, and assembler. R. 29–30. Because the ALJ identified jobs that Ms. DeJesus could perform which exist in substantial numbers in the national economy, she found that Ms. DeJesus was "not disabled." R. 30.

## STANDARD OF REVIEW

My review of the ALJ's decision is deferential; I am bound by her findings of fact to the extent those findings are supported by substantial evidence in the record. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000) (citing *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)). Accordingly, my review of the ALJ's findings of fact is limited to determining whether substantial evidence supports the ALJ's decision. *Hartranft v. Apfel*, 181 F.3d

---

[6] Specifically, the ALJ found that Ms. DeJesus is limited to "never climbing ladders, ropes, or scaffolds; occasionally balancing, stooping, kneeling, crawling, and crouching; occasionally reaching overhead; frequently handling, fingering, and feeling; never exposed to heights; occasionally exposed to machinery, pulmonary irritants, vibration, humidity, and extreme cold or heat; simple, routine tasks and simple work-related decisions; and occasional contact with the public, supervisors, and co-workers." R. 16.

358, 360 (3d Cir. 1999) (citing 42 U.S.C. § 405(g)). If the ALJ's decision is supported by substantial evidence, her disability determination must be upheld. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *see also* 42 U.S.C. § 405(g). "A reviewing court reviews an agency's reasoning to determine whether it is 'arbitrary' or 'capricious,' or, if bound up with a record-based factual conclusion, to determine whether it is supported by 'substantial evidence.'" *Dickinson v. Zurko*, 527 U.S. 150, 164 (1999).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "is more than a mere scintilla but may be less than a preponderance." *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). I must rely on the record developed during the administrative proceedings along with the pleadings in making my determination. *See* 42 U.S.C. § 405(g). I may not weigh the evidence or substitute my own conclusions for those of the ALJ. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). I must also defer to the ALJ's evaluation of evidence, assessment of the witnesses, and reconciliation of conflicting expert opinions. *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009).

The ALJ's legal conclusions and application of legal principles are subject to plenary review. *See Krysztoforski v. Chater*, 55 F.3d 857, 858 (3d Cir. 1995). I must determine whether the ALJ applied the proper legal standards in reaching the decision. *See Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). I must also determine whether the ALJ properly applied Social Security Rulings, as they are binding on the agency. *See Allen v. Barnhart*, 417 F.3d 396, 403 (3d Cir. 2005) (citing *Walton v. Halter*, 243 F.3d 703, 709 (3d Cir. 2001)). Accordingly, I can overturn an ALJ's decision based on an

incorrect application of a legal standard even where I find that the decision is supported by substantial evidence. *Payton v. Barnhart*, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing *Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983)).

An ALJ must provide sufficient detail in her opinion to permit meaningful judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119–20 (3d Cir. 2000). When dealing with conflicting medical evidence, the ALJ must describe the evidence and explain her resolution of the conflict. *Id.* at 121. As the Third Circuit observed in *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir. 1999):

> When a conflict in the evidence exists, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects. *See Stewart v. Secretary of H.E.W.*, 714 F.2d 287, 290 (3d Cir. 1983).

While it is error for an ALJ to fail "to consider and explain [her] reasons for discounting all of the pertinent evidence before [her] in making [her] residual functional capacity determination," *Burnett*, 220 F.3d at 121, an ALJ's decision is to be "read as a whole," *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004); *Caruso v. Comm'r of Soc. Sec.*, 99 F. App'x 376, 379–80 (3d Cir. 2004) (examination of the opinion as a whole permitted "the meaningful review required by *Burnett,*" and a finding that the "ALJ's conclusions [were] . . . supported by substantial evidence."). The reviewing court, by reading the ALJ's opinion as a whole against the record, should be able to understand why the ALJ came to her decision and identify substantial evidence in the record supporting the decision. *See Burnett*, 220 F.3d at 119–20; *Caruso*, 99 F. App'x at 379.

## DISCUSSION

Ms. DeJesus argues that the Commissioner's decision in her case is constitutionally defective and merits reversal because Commissioner Andrew Saul, who oversaw the agency when the ALJ entered her final decision, was protected by an unconstitutional removal statute and served a longer term than the president, in violation of separation of powers principles. Doc. No. 18, at 4–6. Next, Ms. DeJesus alleges that the ALJ acted improperly in rejecting the opinion of her treating physician. *Id.* at 6–17. Ms. DeJesus also contests the ALJ's rejection of her statements concerning her inability to work. *Id.* at 17–25.[7] Lastly, Ms. DeJesus argues that I should award benefits if I find that she is disabled under the Act. *Id.* at 25–26.

The Commissioner responds that irrespective of the merits of Ms. DeJesus' separation of powers argument, no alleged constitutional defect here entitles her to a rehearing of her disability claim. Doc. No. 19, at 4–16. The Commissioner claims that the ALJ's evaluation of the medical opinion evidence is supported by substantial evidence. *Id.* at 16–22. The Commissioner also asserts that the ALJ's evaluation of Ms. DeJesus' subjective complaints is supported by substantial evidence. *Id.* at 22–26. Lastly, the Commissioner argues that, if I decide in Ms. DeJesus' favor, the proper remedy is for a remand, rather than awarding of benefits. *Id.* at 27–28.

In reply, Ms. DeJesus asserts that she was indeed harmed by the separation of powers violation concerning Commissioner Saul's removability, as her claim was denied under his authority and he served pursuant to an unlawful delegation of power, and the

---

[7] Ms. DeJesus has decided to only contest the ALJ's findings and conclusions as they relate to her physical impairments, rather than focusing on her mental impairments as well. Doc. No. 18, at 24 n.15. Accordingly, I only evaluated the ALJ's conclusions and record evidence concerning Ms. DeJesus' physical impairments.

other constitutional defenses raised by the Commissioner do not carry weight here. Doc. No. 21, at 2–7. She also claims that the ALJ improperly evaluated the opinion of her treating physician, even in light of the new regulations governing the evaluation of medical opinions. *Id.* at 7–10. Lastly, Ms. DeJesus reasserts that the ALJ's conclusions regarding her subjective complains of pain are not supported by substantial evidence. *Id.* at 11–12.

After a careful review of the record, I find that neither the ALJ's evaluation of Ms. DeJesus' subjective complaints nor her review of the treating physician's opinion are borne out by the evidence on the record. I also find that the ALJ erred in her application of the agency's guidelines concerning fibromyalgia claims to Ms. DeJesus' testimony and evidence. I will remand the case to the Commissioner for further review consistent with this opinion. Since I am remanding Ms. DeJesus's claim on the substance of the ALJ's decision, I will not reach the constitutional issues raised by the parties.[8]

## A. The ALJ incorrectly evaluated Ms. DeJesus' medical evidence under agency guidance governing the review of fibromyalgia claims.

The ALJ concluded that Ms. DeJesus' statements concerning her fibromyalgia symptoms are "inconsistent and unpersuasive," while noting that several potential causes of her pain have been explained away by her medical providers. R. 25–26. Under relevant Social Security guidance, these aspects of the record bolster, rather than

---

[8] The judges in this district who have addressed similar questions have found that injuries caused by the decisions of ALJs serving under Social Security Commissioners who are protected by unconstitutional removal clauses cannot be traced to the constitutional defect in the Social Security Act. *See Adams v. Kijakazi*, No. 20-3591, 2022 WL 767806, at *9–11 (E.D. Pa. Mar. 14, 2022) (Hey, MJ.); *Burrell v. Kijakazi*, No. CV 21-3662, 2022 WL 742841, at *5 (E.D. Pa. Mar. 10, 2022) (Reid, MJ.); *High v. Kijakazi*, No. CV 20-3528, 2022 WL 394750, at *5–6 (E.D. Pa. Feb. 9, 2022) (Wells, MJ.); *Wicker v. Kijakazi*, No. CV 20-4771, 2022 WL 267896, at *8–10 (E.D. Pa. Jan. 28, 2022) (Heffley, MJ.).

undermine, Ms. DeJesus' claim that her fibromyalgia symptoms are disabling. The ALJ must review this evidence in light of the relevant administrative guidance on remand.

From the outset, the ALJ's skeptical assertion that Ms. DeJesus' statements concerning her fibromyalgia symptoms are "inconsistent" fails to consider that fibromyalgia by nature fluctuates in severity. When evaluating the RFC of fibromyalgia patients, an ALJ must "consider a longitudinal record … whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2P, Titles II & XVI: Evaluation of Fibromyalgia, 2012 WL 3104869, at *6 (July 25, 2012). Inconsistency in the record without more should not be wielded against a claimant complaining of disabling fibromyalgia symptoms. The ALJ erred by apparently doing so here.

In concluding that Ms. DeJesus' statements about her symptoms are "inconsistent and unpersuasive," the ALJ pointed to a number of medical records which rules out other causes for Ms. DeJesus' pain. Rather than undermine Ms. DeJesus' claim, these records support her claim. In making a disability claim on account of fibromyalgia, a claimant must present "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."[9] *See id.* at *3. Ms. DeJesus presents this evidence accordingly, but the ALJ

---

[9] For an ALJ to find that a claimant has [a medically determinable impairment] of fibromyalgia, the claimant must have 1) "a history of widespread pain," 2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and" 3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded." SSR 12-2p, at *3. Widespread pain is defined as "pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back)—that has persisted (or that persisted) for at least 3 months [and that] may fluctuate in intensity and may not always be present." *Id.* at *2.

instead discounted Ms. DeJesus' subjective complaints of pain using this evidence. For instance, the ALJ noted that Ms. DeJesus "described pain in her knees and swelling: however, there is no indication from the record that swelling or edema was found during a physical exam." R. 25. The ALJ also pointed out that "[h]er knee x-rays did not show evidence of arthritis," "[h]er MRI of the cervical spine was essentially normal," and "[h]er physical exams have consistently revealed normal and equal strength in both her upper and lower extremities." R. 25–26. The ALJ even correctly explained that physicians have attributed some of these symptoms, including pain in Ms. DeJesus' cervical spine, to fibromyalgia. R. 26; *see also* R. 1118 (pain specialist writes "I believe that a large component of the patient's pain is from fibromyalgia"). As this evidence appears to support Ms. DeJesus' complaints about fibromyalgia being the source of her pain, rather than contradict them, the ALJ erred by counting this evidence against Ms. DeJesus without further explanation.[10]

The ALJ also wrote that "[t]he pain doctor attributed her lower back pain to being overweight." R. 26. First and foremost, this statement mischaracterizes the pain specialist's note, as the doctor wrote, "I suggested to consider weight reduction programs which will help low back/neck pain." R. 1128. This note suggests that weight is a factor in her pain, not the sole or dominant cause of her pain. Nevertheless, the ALJ's statement here ignores the relevant agency rulings concerning obesity. The agency recently cautioned that "[t]he combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately." SSR

---

[10] Relatedly, the ALJ noted in the relevant analysis that Ms. DeJesus "has been described as well nourished and well developed." R. 26. The ALJ did not explain how this connects to Ms. DeJesus' subjective complaints of pain, and I cannot make out any rational connection between the two. The ALJ must explain how the evidence she cites supports her findings on remand.

19-2P, Titles II & XVI: Evaluating Cases Involving Obesity, at *4 (May 20, 2019). Rather than serve as an alternative explanation for Ms. DeJesus' symptoms, the ALJ should have considered obesity as a factor which exacerbates Ms. DeJesus' fibromyalgia symptoms. The ALJ must consider the effects of obesity on Ms. DeJesus' subjective complaints of pain, rather than use obesity to explain away other potential causes of pain based on merely one record.

The ALJ ultimately concluded, "[t]here is no evidence to show frequent flares occurred or that the severity of the alleged symptoms were totally disabling." R. 26. This conclusion, once again, does not reflect the agency's exhortation that "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, at *6. It also does not reflect the agency's diagnostic guidance for fibromyalgia, which notes that "[t]he pain may fluctuate in intensity and may not always be present." *Id*. at *2. The ALJ must follow the rulings and regulations of the Social Security Administration in weighing and considering evidence in any given case. *See Sykes v. Apfel*, 228 F.3d 259, 271 (3d Cir. 2000). Here, I find that she did not follow the relevant rulings. This must be corrected on remand.[11]

## B. The ALJ's evaluation of Ms. DeJesus' fibromyalgia symptoms are not supported by substantial evidence.

The ALJ's conclusion that Ms. DeJesus' description of her symptoms to be unpersuasive is also generally not supported by substantial evidence. *See* R. 25–26. While the ALJ made several citations to the record in explaining this conclusion, I find

---

[11] The ALJ also commented that "[h]er joint pain has been attributed to fibromyalgia, but the evidence shows that she ambulates effectively and without assistance." R. 26. I am unable to determine how the ALJ reached this conclusion using the cited evidence, and without further explanation, I am unable to meaningfully review this claim. *See Burnett*, 220 F.3d at 119–20.

that she failed to consider contradictory evidence and often mischaracterized cited evidence. This is erroneous and warrants a remand.

When evaluating a claimant's fibromyalgia symptoms, if the medical records do not support a claimant's complains of pain, the ALJ must take all evidence in the record under consideration, "including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms."[12] SSR 12-2P, at *5. More generally, when evaluating a claimant's assertions of pain, the ALJ must consider "medical signs and laboratory findings;" "diagnosis, prognosis, and other medical opinions;" and "the individual's medical history, treatment and response, prior work record and efforts to work, daily activities, and other information concerning the individual's symptoms and how the symptoms affect the individual's ability to work." SSR 96-7p, Policy Interpretation Ruling Titles II And XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, at *5 (July 2, 1996); *see also* 20 C.F.R. § 404.1529(c)(3) (enumerating factors relevant to an ALJ's consideration of the nature and severity of a claimant's pain and other symptoms). Subjective complaints of pain supported by medical evidence should

---

[12] The Social Security Administration provides the following additional guidance for evaluating claims of fibromyalgia: "Symptoms and signs that may be considered include the '(s)omatic symptoms' referred to in Table No. 4, 'Fibromyalgia diagnostic criteria,' in the 2010 ACR Preliminary Diagnostic Criteria. We consider some of the 'somatic symptoms' listed in Table No. 4 to be 'signs' under 20 CFR 404.1528(b) and 416.928(b). These 'somatic symptoms' include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms."  SSR 12-2p at *3 n.9.

be given "great weight" unless there is contradictory medical evidence. *Mason*, 994 F.2d at 1067–68. If the ALJ decides to reject the claimant's assertion of pain, she must explain and provide specific reasons for doing so. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999); *see also* SSR 96-7p, at *2 (July 2, 1996) ("[I]t is not sufficient to make a conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.'").

In concluding that Ms. DeJesus's complaints are "inconsistent and unpersuasive," the ALJ made a number of questionable findings. For one, the ALJ wrote, "[t]he claimant's fibromyalgia has been described as 'stable.'" R. 25. This statement is not borne out by the record as a whole. In making this finding, the ALJ cited to a stray line in primary care physician Dr. Kristen Kingry's medical notes from a January 9, 2017 visit, where she wrote that Ms. DeJesus is "stable on current meds." R. 988. This conclusion is undermined by a note from a March 22, 2017 visit to the same office that Ms. DeJesus' fibromyalgia symptoms deteriorated in the preceding months. R. 1002. Ms. DeJesus' medical records also show that, as of December 7, 2017, her fibromyalgia was "worsening." R. 1031. In light of this record evidence, Dr. Kingry's January 2017 observation should not be seen as proof that Ms. DeJesus's fibromyalgia symptoms are indeed "stable." The contradictory evidence must be addressed on remand.

The ALJ also stated that "[h]er pain was described as 'mild.'"[13] R. 25. Once again, this is a selective reading of Ms. DeJesus's record which fails to adequately resolve

---

[13] The ALJ cites R. 1009 when making this claim. However, my review of that record from Dr. Kingry finds no description of her pain as "mild." The only use of the term "mild" on that page of the record is reference to a prescription for Naproxen which should be taken "daily as needed for mild pain." R. 1009. I find this does not equate to a diagnosis of mild pain here, as the note directly above this guidance

contradictory record evidence. During a December 31, 2018 appointment with her pain specialist, Ms. DeJesus described her pain as being at 8 out of 10 in her neck, shoulders, and back. R. 1129. On July 10, 2017, Ms. DeJesus temporarily stopped participating in physical therapy because she was in too much pain. R. 945. Ms. DeJesus has sought emergency room care because of her pain. R. 1575–82, 1615–21. She even received trigger point injections to address her pain. R. 1127–33. This evidence suggests that Ms. DeJesus' pain was anything but "mild" at times. The ALJ must address this material and contradictory evidence on remand.

The ALJ also pointed to Ms. DeJesus' allegedly small Gabapentin dosage to support her conclusion. R. 26. This finding requires an inference that is not borne out by the record. First and foremost, Dr. Kingry noted on September 26, 2017 that she increased Ms. DeJesus' Gabapentin dose, yet Ms. DeJesus' symptoms did not improve. R. 1024–25. Secondly, Dr. Kingry noted on December 7, 2018 that "Gabapentin did not really help." R. 55. Additionally, Ms. DeJesus testified that she is taking "Gabapentin when I can, the lower dosage," R. 257, and that taking a higher dosage leads to nausea, R. 273. Ms. DeJesus' medical records show that she has struggled to tolerate Gabapentin and other medications over the past few years. *See, e.g.*, R. 55 (Dr. Kingry notes that Ms. DeJesus is "not taking Lyrica as this made her thinking too cloudy, Gabapentin did not really help, did not tolerate Cymbalta"), R. 105 (Neurontin, or Gabapentin, "does make her sleepy"). Rather than suggest mild fibromyalgia symptoms, the record suggests that prescribing Ms. DeJesus a higher dosage of Gabapentin would likely be futile, if not harmful. The ALJ's finding here is not supported by substantial evidence.

---

discusses how future therapies will need to be considered if fibromyalgia symptoms do not improve. *See id*. Nowhere else in that particular record did Dr. Kingry describe Ms. DeJesus' pain as mild.

Relatedly, the ALJ described Ms. DeJesus' treatment for neck and joint pain as "conservative." R. 27. This conclusion is not supported by substantial evidence. It may be appropriate for a doctor to form an opinion that one would expect to see a more aggressive treatment history for a medical issue. Such an opinion would be based upon the doctor's years of medical training and clinical experience, and it would enable her to come to some general rule-of-thumb about the relationship between aggressive treatment history and the severity of the disorder. Such an opinion is often offered by an examining or consulting physician and can form the basis of an ALJ's determination that the level of treatment is not commensurate with the limitations identified by the treating physician. But the ALJ is not free to "go it alone." It is not permissible for an ALJ to arrive at such a conclusion, absent substantial support in the medical evidence in the record before her. Conservative treatment for a particular condition may mean that aggressive treatment does not offer much hope of success, rather than indicate that the condition is mild. Without the benefit of years of training and clinical experience that a physician brings to bear in evaluating whether a course of treatment is "conservative," and the significance of conservative versus aggressive treatment, the conclusion is not supported by substantial evidence. I find no support for this conclusion in Ms. DeJesus' medical record, as the record merely describes Ms. DeJesus' treatment without weighing whether the treatments are aggressive or conservative by nature. In any event, steroid injections for neck and joint pain do not strike me as "conservative." *See* R. 1127–33. Like the issues described above, this shortcoming must be addressed on remand.

### C.  The ALJ's conclusions about Ms. DeJesus' engagement in daily activities are not supported by substantial evidence.

The ALJ claimed to find "no indication from the record that the claimant needs assistance ambulating or with daily activities." R. 26. In support of this finding, she asserted that Ms. DeJesus drives, cares for four children, maintains her home, attends activities for her children, and attends sporting events and hosts movie nights. *Id*. The ALJ mischaracterized the record evidence and reached conclusions not supported by substantial evidence in making this finding.

Several pieces of evidence in the record undermine the ALJ's conclusion that Ms. DeJesus effectively engages in various daily activities. Ms. DeJesus noted during a June 7, 2017 physical therapy appointment that her knee grows stiff after 30 minutes of driving and she sleeps on the couch because climbing steps aggravates her pain. R. 934. During that same appointment, her physical therapist noted that Ms. DeJesus needs a therapy plan to reduce the assistance she needed in navigating activities of daily life. R. 936. On an October 5, 2017 visit with her physical therapist, Ms. DeJesus "report[ed] great deal of difficult with cleaning floors, lifting grocery bags, sitting 45 min, high moderate difficulty with combing hair and climbing a flight of stairs, and moderate difficult[y] walking 20 min[utes] continuously, preparing a homemade meal, changing bed sheets or going grocery shopping." R. 951. At this time, Ms. DeJesus' goal for physical therapy was to decrease pain so she can "turn head while driving without discomfort and get out of bed without assist[ance]." *Id*. These are not the goals of someone who is navigating everyday life without much challenge, nor are these necessarily the statements of someone who does not need assistance completing daily activities.

In concluding that Ms. DeJesus "attends sporting events and hosts movie nights," R. 26, the ALJ cited one line in a June 7, 2017 physical therapy report that states her activities and hobbies are "movie nights, go to wrestling events, son's [sporting] events," R. 934. Without further context or additional supporting evidence, I cannot gauge how frequently she engages in these events. Furthermore, Ms. DeJesus testified that she does not go out with friends, and she could not even care for her ill mother because of her pain. R. 264. She also testified that she only goes out about once a month to do things with her kids, "when they make me," and then returns home tired. R. 276. The ALJ must explain why this contradictory evidence does not undermine her finding that Ms. DeJesus is able to navigate daily activities without assistance.

As to the ALJ's assertion that Ms. DeJesus cares for her children and maintains her home, the ALJ cited to a record which instead states, "she gets depressed at times because she wants to stay active and play [with] her grandkids" and that "things are going well at home, good support from her children." R. 1013. There is no comment here about her ability to maintain the home or take care of the children. In fact, one could easily make the opposite conclusion based on this record. Ms. DeJesus also testified that "the kids take care of me more than I take care of them now that they are older." R. 257. She added that, on mornings her sons have school, she sets an alarm and listens to make sure they get up, and she calls them on the phone if she does not hear them so that she does not need to get out of bed. R. 262. This evidence suggests that Ms. DeJesus faces difficulty in caring for her children on account of her pain. The above contradictory evidence must be resolved on remand.

**D. The ALJ's evaluation of treating physician Dr. Kingry's opinion is not supported by substantial evidence.**

After reviewing treating physician Dr. Kingry's medical opinion, *see* R. 1668–69, the ALJ concluded that the opinion "is not persuasive, because the evidence of record does not support it," R. 28. My review of the record, particularly the ALJ's cited evidence, casts this conclusion into doubt, as I find the ALJ mischaracterized some of the cited evidence and failed to resolve material contradictory evidence. This error warrants a remand.

Ms. DeJesus' claim, filed on December 15, 2017, is subject to the new Social Security regulations with regard to the treatment of medical opinions, which became effective on March 27, 2017. The new regulations no longer require an ALJ to give a certain evidentiary weight to a medical opinion, but instead require the ALJ to focus on the persuasiveness of each opinion:

> We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources.

20 C.F.R. § 416.920c(a).

The regulations note that supportability and consistency "are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ... to be." *Id*. § 416.920c(b)(2). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) ... the more persuasive the medical opinions ... will be." *Id*. § 416.920c(c)(1). Consistency means "[t]he more consistent a medical opinion(s) ... is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will

be." *Id.* § 416.920c(c)(2). The regulations also instruct an ALJ to consider the physician's relationship with a claimant, whether the physician "has received advanced education and training" as a specialist, and other factors such as the medical source's familiarity with other evidence. *Id.* § 416.920c(c)(3)–(5). Only the concepts of consistency and supportability, however, must be addressed by ALJs in their written opinions. *Id.* § 416.920c(b)(2).

Despite providing a new analytical framework for ALJs, these regulations "[do] not authorize lay medical determinations by ALJs" and do not "relieve the ALJ of the responsibility of adequately articulating the basis for a medical opinion evaluation." *Kenyon v. Saul*, No. 1:20-CV-1372, 2021 WL 2015067, at *4 (M.D. Pa. May 19, 2021). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion "due to his or her own credibility judgments, speculation, or lay opinion." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (internal quotation and citations omitted). "While the ALJ is, of course, not bound to accept physicians' conclusions, [she] may not reject them unless [she] first weighs them against other relevant evidence and explains why certain evidence has been accepted and why other evidence has been rejected." *Cadillac v. Barnhart*, 84 F. App'x 163, 168 (3d Cir. 2003) (quoting *Kent v. Schweiker*, 710 F.2d 110, 115 n.5 (3d Cir. 1983)) (internal quotation omitted).

The ALJ found Dr. Kingry's recommendation that Ms. DeJesus be "limited to performing approximately four hours of exertional activities with frequent rest periods" to be "extreme … in consideration of the conservative treatment that has been rendered." R. 28. In reaching this conclusion, the ALJ cited the physical activity doctors

have encouraged or instructed Ms. DeJesus to pursue, as well as instances when Ms. DeJesus benefitted from said activity. R. 28. On the contrary, I find there is material evidence on the record and from Ms. DeJesus' testimony which would support Dr. Kingry's proposed limits on exertional activity. *See, e.g.*, R. 258 (Ms. DeJesus testifies that "when I push myself [with physical activity], the next two or three days, I'm back in bed."), 261 (Ms. DeJesus testifies that, on a good day, she can only walk two or three blocks, and she cannot even walk one block on a bad day), 951 (Ms. DeJesus "reports great deal of difficult[y] with … sitting 45 min … moderate difficult[y] walking 20 [minutes] continuously"). The ALJ must resolve this contradictory evidence on remand.[14]

In further undermining Dr. Kingry's exertional limit recommendation, the ALJ wrote, "[i]n the fibromyalgia medical community, it is well known that the patients are required to stay active." R. 28. This is another lay opinion that is not supported by the record. Much like the ALJ's assertions that Ms. DeJesus has undergone conservative treatment, this is an opinion that only a doctor with the requisite training and experience could properly make. The ALJ is not permitted to make speculative inferences from medical reports or "employ her own expertise against that of a physician who presents competent medical evidence." *Plummer*, 186 F.3d at 429. In any event, this conclusion is not borne out by the record in this case. Ms. DeJesus has apparently at times been unable to engage in her physical therapy due to pain, *see, e.g.*, R. 945, and her pain specialist in December 2017 told her to continue activity as *tolerated*, *see* R. 1031. Ms. DeJesus also testified that land therapy causes her more knee and shoulder

---

[14] Additionally, the ALJ's conclusion that Ms. DeJesus has undergone conservative treatment is an improper lay opinion.

pain, and that her knees have a difficult time tolerating aqua therapy. R. 265. Sweeping claims about treatments based on the ALJ's lay opinion and not on the actual course of a claimant's therapy are not substantial evidence. Ms. DeJesus' claims must be reconsidered appropriately on remand.

The ALJ also erred in evaluating Dr. Kingry's narrative about pharmaceutical treatment. As to Dr. Kingry's discussion about Gabapentin and Lorazepam potentially causing drowsiness and fatigue, the ALJ asserted that "these medications can be prescribed before bedtime precisely to avoid these possible side effects." R. 28. Once again, this is a lay opinion not supported by the record. In fact, Ms. DeJesus testified that she takes a low dose of both Gabapentin and Lorazepam to help her sleep and minimize the pain, but she cannot tolerate higher doses because she suffers nausea as a result. R. 273. Dr. Kingry's most recent medical record shows that she in fact prescribed Gabapentin for Ms. DeJesus. *See* R. 1254. I am unclear as to why the ALJ found that Dr. Kingry's reference to these side effects of these two medications undermines her report. The ALJ's finding does not permit meaningful review.

Lastly, the ALJ asserted that "Dr. Kingry's opinion appeared to be given to try to assist the claimant in obtaining disability benefits without adequate basis in support thereof." R. 28. Neither the cited evidence nor any other evidence in the record supports such a conclusion. Ms. DeJesus sought out the care of Dr. Kingry repeatedly since December 2016. *See* R. 980–1067, 1349–1496. Even if the ALJ could plausibly find on remand that the opinion is inconsistent at times with the record evidence, there is no evidence in the record that Dr. Kingry is seeking to baselessly or in bad faith advance an application for disability benefits.

In response to Ms. DeJesus's petition for review, the Commissioner asserted that "the ALJ need only explain how he or she considered the 'the most important factors' of supportability and consistency." Doc. No. 19, at 18 (quoting 20 CFR 416.920c(b)(2)). This change in the regulations does not obviate the need to support the ALJ's consideration of these factors with substantial evidence. By dismissing Dr. Kingry's opinion through conclusory statements, mischaracterizations of record evidence, lay opinions, and failure to resolve contradictory evidence, the ALJ's conclusion does not survive scrutiny even under the less restrictive 2017 regulations. A remand is warranted.

### E.  I will remand Ms. DeJesus' case to the Commissioner for further review.

Ms. DeJesus seeks an award of benefits should I find that the ALJ erred in denying her SSI application. A reversal with direction to the Commissioner to award benefits is justified where there has been inordinate delay not attributable to the plaintiff, the existing record contains substantial evidence supporting a finding of disability, and it is unlikely that any additional material evidence will be unearthed on remand. *See Morales*, 225 F.3d at 320 (awarding benefits when delays were not attributable to the claimant, the record was unlikely to change, and substantial evidence established that claimant suffered from a severe mental disability). An award of benefits, rather than a remand for additional investigation or explanation, should be rare. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Where, as here, conflicting evidence has not been resolved, or the ALJ has not discussed all of the relevant evidence, remand is appropriate. *See Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001); *Leech v. Barnhart*, 111 F. App'x 652, 658–59 (3d Cir. 2004) (remand is appropriate where the ALJ "failed to make consistent findings

and conclusions, but we are not prepared to hold that [claimant] necessarily is entitled to benefits…"). As there is conflicting substantial evidence which remains to be resolved in this matter, there has not been inordinate delay in this case, and more material evidence may be unearthed given Ms. DeJesus's fluctuating fibromyalgia symptoms, I find that a remand, rather than an award of benefits, is appropriate here. I make no judgments as to the weight of the evidence on the record, but instruct the ALJ on remand to weigh all material evidence under the appropriate legal standards and to discuss and resolve evidence which contradicts her findings.

## CONCLUSION

For the reasons explained, Ms. DeJesus' request for review is granted, the final decision of the Commissioner is reversed, and this matter is remanded to the Commissioner for further proceedings consistent with this opinion.

**BY THE COURT:**

*s/ Richard A. Lloret*
**RICHARD A. LLORET**
**U.S. Magistrate Judge**